Mr. Ratner, whenever you're ready. Thank you, Chief Judge. Judge Brost, and may it please the court. The district court made a series of legal errors in this case, and I'd like to focus on the most important three of them. Together, they require reversal. But just to clarify that, so you need to prevail on all three of the issues you've raised in order to- On both materiality and intent, Your Honor. We think that the expert issue is sort of an outgrowth of her wrongful exclusion of the ITC determination. But yes, we need to win all the issues. Well, let me follow up on the Chief Judge's question. Suppose you should win on the ALJ, the 8038 issue, but lose on the expert opinion issue. Where does that leave us? Well, Your Honor, what the judge in this court never considered was a record that included the ITC determination. We think that the ITC determination resolves any complexity. And that what the district court actually did here was say, we have complex patents. There's a rigid requirement that where the patents are complex, I need an expert. Well, let's suppose for argument's sake that we disagree with you that it was a rigid requirement and that all she was saying was, in this case, this is sufficiently complex that I think you needed an expert. If we agree with that decision, but we disagree with her on excluding the ALJ opinion, what results? If you agree that it's a failure of proof, that expert testimony is required, then we would lose, Your Honor. But the question that the district court was asking for expert testimony on is not necessary to this court's disposition. There is no reason for this court to worry about the complexity of the patents. Is that because if the ALJ decision comes in, there's sufficient factual findings in that to create a genuine issue on the same issues the district court wanted an expert for? That's one possible explanation. But the real explanation, Your Honor, is that the question here is but-for materiality, not invalidity. What we don't have to do is show that these patents are invalid. That is, admittedly, the most common way of showing but-for materiality. But it can also be done by showing what the PTO would have done. And here we have other evidence of that. And that's exactly what this court said in TransRep, Your Honor, when its materiality analysis was a single paragraph. And it said because we know what the PTO would have done, regardless of any invalidity findings, regardless of any expert testimony, we don't need to dig any deeper. And this court said that was a definitional case of but-for materiality. And that's the situation here. We have probative evidence that what would have happened in the PTO, had it been aware of these prior art references, is it would have said these patents are insufficient. These patents cannot be issued. And that applies to both patents, Your Honor, even though it only considered 517. So your answer to the question of whether the losing on the expert testimony issue would be fatal to you is no. Well, it depends what this court understands the requirement to be. If this court agreed that expert testimony is required simply because of complexity, then we would lose. Do we need it? No. I mean, no. I mean, it's not a rigid requirement, necessarily, to conclude. I mean, we look at this case, we look at what the issues are, how complex the prior art is, and we reach that determination. Correct, Your Honor. I think we're saying the same thing. Maybe I'm being unclear. If this court were determined that other sufficient evidence can show but-for materiality, regardless of the outcome of the expert question. Other sufficient evidence that was produced and put into the summary judgment record. Correct. Just like the ITC determined in this case, Your Honor. But is there more than just the ITC determination that constitutes that extra evidence that you say establishes materiality? Yes, Your Honor. We also have testimony from one of Sandisk's inventors that one of the Simcoe references disclosed permanent inhibit. And that is the key to novelty on both of these patents. That's at 12,004 of the appendix, Your Honor. And that's an admission that the prior art references here would have been. And in that sense, Your Honor, I think what we're saying is that there's-we are only relying on an ALJ determination here. That is-it's not correct, but also it's not problematic. And that's what the Second Circuit said in Henry v. Dayton, is that there are situations where an ALJ's findings can be sufficient to survive summary judgment. In that case, it was an employment discrimination case, but the factual findings were exactly the same, exactly on point with the subsequent litigation. And that's what's going on here. Explain to me why it is, as a matter of policy, why Congress would promulgate a rule that had the following components. Number one, assuming collateral estoppel is not applicable, you cannot introduce the decision of a court for purposes of admission in a later proceeding. So you can't get Judge Fogle's opinion in, but you can introduce the decision of an administrative agency that's doing exactly the same thing, presumably, as the court is doing. What sense does that make? Well, Your Honor, that's explained in the advisory committee notes. The focus of 803- I read them, and I didn't find the explanation to be very satisfying. The 803- Other than history. The 803-8 exception, Your Honor, targets executive agencies. It's federal-it's agency actions that we're concerned about. Whether the agency conducts its investigation through a hearing or through a more traditional on-the-ground investigation, the point is that those investigations are presumed to be reliable. And that's what every court to consider this question has said, Your Honor, is that ALJ determination- But focusing on the difference between a court decision and an ALJ's decision, why is the ALJ's decision given more credence than a fully adjudicated determination by a court? The process before the ITC ALJ is very similar to what would happen before a court. That's correct, Your Honor, but that's also true in all these other cases. I know, but what's the policy-based reason for that distinction? The reason is that we presume that investigations conducted by executive agencies or federal agencies charged with those investigations were done correctly. And when we apply collateral estoppel, we make exactly that same prediction. That's a much more potent pill than is- It is, but why don't we then say, well, and therefore decisions of courts are applicable the same way as the decisions of ALJs for purposes of admissibility under 8033. Why not? I believe, Your Honor, that it goes to the specialization. What we're dealing with here is agencies that are charged specifically with investigating these very questions. Courts of general jurisdiction are not like that. So it's true that this feels very much like a district court opinion, but that's the same question that the court wrestled with in Zeus Enterprises. So if this were coming from the Court of International Trade, a specialized court, you would take a different view of it? I'm not as familiar with the Court of International Trade, Your Honor, but if it's not an investigation, that is the trigger here, then it wouldn't get this treatment. That's right, and I do think it's important to note that every court that has grappled with this question has said ALJ determinations are investigations, even though they are presided over by someone with judge in the title and they look like hearings. That Zeus Enterprises in the Fourth Circuit wrestled with it expressly, it's Henry v. Daytop in the Second Circuit, Inmate Paducah in the Sixth Circuit, the Lloyd case in the Third Circuit. This would be the first court to say otherwise, Your Honor, and I think this court should address this question as a question of federal circuit law, and the reason, Your Honor, is that there is no dispute here that what the district court did is wrong. Sandisk is not here defending the issue preclusion ruling. The question is whether it's admissible under 803.8, and the admissibility of the ITC's determinations to show but-for materiality. Did you cite that exception anywhere in the summary judgment briefing? Your Honor, we didn't because we didn't have an opportunity to do so. I think the way this was presented... You didn't, but I mean, I looked at your brief, and I mean, you've excerpted it, but I pulled the whole thing up. The problem to me is that I don't even read them as suggesting that you are relying on 803 for this, because most of the times when you were citing the ITC decision, you were also string-citing Judge Fogle's decision in parallel, and so it seems to me that basically what you were doing was saying here were two tribunals, one a court and one an adjudicator, and if you agree with these conclusions, you don't need to go any further, and you agree now that Judge Fogle's decision can't provide evidence. So it seems to me that you've done very little to preserve this 803 argument in the sense that you never really specifically said, this is factual evidence. You were citing them, at least the way I read it, as a decision, not as an investigation. Your Honor, we cited it in the factual background. You also cited Judge Fogle's decision. We cited that in the relevant procedural history. You say you cited, you mean you cited the ALJ's opinion? You didn't ever cite 803A. No, no, no, I'm sorry. We cited the ALJ's opinion, and that's at 11-879, I believe, of the appendix, where we cite it in the background section, and in fact, the district court noted that. When you're talking about, in your argument section, about sufficient facts to impose summary judgment, you're not just citing the ALJ's decision. You're citing Judge Fogle's decision, usually first, and then the ALJ decision. That's correct, Your Honor, but I do think the way this was presented to the district court is relevant here. Well, I think it is, and I think it's very confusing to the district court, the way you've set this up, which is, here's Judge Fogle, here's the ITC. We don't need to put on any more evidence without kind of separating them out. I understand your point on 803. It seems to be a good one, but I think you didn't do enough in a sense that you led the district court down this path and let yourself open to the notion that you were citing these for preclusive effects, which she, I think you now agree, correctly rejected. Well, she correctly rejected that they're not issue-preclusive, Your Honor, but we were citing this as evidence, and I really would like the court to understand the way in which this came to pass. What happened was we cited it as evidence in our background section, and then in its opposition brief, Sandisk, in a footnote, said it's inadmissible as evidence because of issue preclusion, and the district court did consider its admissibility. It's true that it didn't consider 803 expressly, because you'll see on footnote one at page one, she decided it without argument. I don't know when we could possibly have made the ... There's no burden to expressly argue that this admissible document is admissible for reason X or Y. You were also citing Judge Fogle's decision for evidence. Well, I agree. Don't you see how that's confusing to the district court when you're citing two different decisions of tribunals as evidence, and one of them's clearly not evidence? I agree with you that it could have been more artfully done, Your Honor, but even there, the point is we were citing both as evidence. We were wrong about one, but we were right about the other, and the other is sufficient to survive summary judgment, and that's the bottom line here, is that we have probative evidence. The district court recognized that we were citing it as evidence and said it's not evidence for the reason that Sandisk proposed, which is issue preclusion, and that's wrong. I would like to turn, if you don't mind, to the intent issue. Sure. As you know, you're looking down the barrel of a very vigorous standard for proving the kind of intent that's necessary for Walker process. It's, in theory at least, theracents on Judge Fogle's bases for concluding that there was a submissible case of intent, but several of those seem to me to be questionable in light of Judge Armstrong's conclusions, such as inconsistencies in testimony and pointing out that, for example, one of the prior patents, I think the 560 patent, was, as far as she could see, not shown to be related to the patents in suit. Also, the database that you rely on heavily, apparently it had many, many entries, I think at least 1,319. I think that was one of the numbers. But that's a lot of entries, and apparently, according to the testimony, the database was not electronically searchable at the time of the 338 re-exam or the 517 prosecution. What's left? So, Your Honor, a couple of points on that. The first is, as between the evidence that Judge Fogle considered and the evidence here, there's really only one difference. The misrepresentation issue that you're talking about did not go to omission of our withholding relevant patents. And he said that there was sufficient evidence. But you're not arguing here misrepresentation. You're purely arguing omission. Correct. Correct, Your Honor. And that one can't have supported his conclusion on intent as to the withholding of material references. So the only difference has to do with a prior patent being rejected on the basis of JP100. And that, we agree, is not here. But all the other evidence is in this case, Your Honor. And our single best piece of evidence is Sandisk's retention of Simcoe in the 338 re-exam. But I looked carefully at the testimony on that, and I don't see that that testimony says he was hired in connection with the 338. It says he was hired in connection with the ITC 382 investigation. What is there that says he was a consultant for purposes of the 338 re-exam? Your Honor, that's a finding of fact that the district court made. It's in the opinion at 24. She says he was retained as a consultant. As a consultant? Correct. Period. In the 338 re-exam. She says specifically at page 24. Can you expressly say that? Yes, Your Honor. I'm recording her opinion when we cite that. All right. I see that I only have a minute left. I'd love to reserve whatever I have left for you. Thank you. May it please the court. Raoul Kennedy, Skadden Arps on behalf of Sandisk. I'd like to address two points today. One, to touch on something that's already been addressed. Why the plaintiff's failure to offer any admissible evidence on the subject of intent to deceive in and of itself defeats any showing of a material dispute. And even if the ALJ's determination were to be found admissible, that would not establish a tribal issue of fact. Let me start first with the evidence of intent. As Judge Armstrong pointed out, the only evidence that was offered was Judge Fogel's opinion. She ruled that is not evidence. That ruling has not been appealed from. So, I submit that for purposes of today, we have a binding, unappealed finding that the essential element of intent to deceive is absent. And it isn't even close because no evidence whatsoever was submitted. At page 27, footnote four. Wait, wait, if you would. Did I understand you to say that the plaintiff's opposition to the summary judgment did not rely on the ALJ's opinion as opposed to, or in addition to, Judge Fogel's opinion? That's exactly what I'm saying. Well, I'm looking at, I think it's page 13 of the plaintiff's opposition, and it says, the references Sandfisk withheld from the PTO were material because the ALJ in the 560 investigation found that they invalidated one claim of the 517 patent. That seems to be relying on the ALJ's opinion, not just Judge Fogel's. Your Honor, at page 14 of the discussion of intent to deceive starts at page 14, line three. Yeah. On the same version. And where are you? This is, you've all divided up these different parts of these briefs into different pages. It's a little confusing. Where are you in the appendix? The version I have is not in the appendix. Well, I haven't found that. I haven't. Sometimes it's page 13, sometimes it's page 14. No, it's fine. You can just read it. So you're saying, if I understand it, that the portion that I just read went to materiality, not to intent? Correct. Your Honor, if you turn to the next page with the five bullet points, I have extra copies if it would be of any help. That's okay. That's all right. Section B, the jury is entitled to infer fraud and intent to deceive. They list five bullet points, which are the five forms of evidence we've talked about. And the reference for those is footnote 26. And if we go down to the bottom of the page, footnote 26 is Fogel opinion at 12. And in her opinion, that's exactly what Judge Armstrong said. You didn't cite any evidence. What you did was on page 14 of your brief... Sorry, I think I misunderstood you. I thought you were saying they didn't rely on the ALJ decision for materiality, but you're talking about... You're saying intent. The intent portion. I apologize if I misspoke. But you agree that they relied on it for the materiality portion? Yes. Okay. No question about that. Okay. We're square. I understand. So purely on intent to deceive, all they relied on was Judge Fogel. Judge Armstrong found that wasn't evidence. They did not appeal in that ruling. However, in their reply brief at page 27, footnote 4, they now say that they did present evidence. And I would submit that they then cite to some of the early pages background material in their brief, which don't contain any citations of authority. It's a discussion. But when we get down to what Judge Fogel was given and told, here is the... Judge Armstrong. Excuse me. Yes, Judge Armstrong was told, here's what the evidence of intent to deceive is. It was exclusively on Judge Fogel. And I don't think they can back off from that. Unless there are questions there, let me turn to why, regardless of the admissibility of the ALJ report. Let me ask you about... I could not find the reference, just quickly looking through her opinion. But is it correct, as your opposing counsel has said, that the district court found that Simcoe was hired in connection with the 338 re-exam? Your Honor, I was leafing through. That's the first I heard of that. I thought he was just hired with regard to the re-examination, as opposed to... Yeah, the testimony does not refer to the 338. So, unless there's some testimony that I didn't find, but nobody has cited. But the testimony refers to the 382, not the 338. Correct. That's what I understand. So it would be helpful if we could establish for sure whether she made any kind of... but said that it was in connection with the 338. Understood that we're working on it. It seems to me that I think your friend cited page 24 of her opinion. But what I see on page 24 is not her finding, but the fact that plaintiffs are relying on Judge Fogel's determination. And one of those, I think number three, is that Sandisk had retained Simcoe as a consultant in connection with the 338. Right. That's what I understood. That's certainly what Judge Fogel said. But I didn't understand, and maybe I'm mistaken in this, that Judge Armstrong had embraced that finding. No, I did not find that she embraced it. And the discussion is there on the next page after she says, this isn't evidence, but I'm going to consider what she euphemistically calls the circumstantial evidence. And I'm not aware of any further discussion beyond those pages. I won't say which page number, since mine are mispaginated from yours. But unless there's anything further, moving on to the ALJ report. As you will recall, the ALJ found that the domestic industry requirement wasn't satisfied as to the 338. So therefore, there were never any invalidity or other substantive findings made as to the 338. Without expert testimony, I submit there is no way that a lay jury is going to be able to determine whether the basis for finding the 517, a method patent, have claims for invalid, can be imported over and applied to the 338, which as we know is a means plus function patent, with not one, but as I counted, five separate means plus functions. But suppose the 338 drops out and all we're left with is the 517. What is your argument as to why the ALJ's opinion on the 517 would not be admissible and sufficient to get over summary judgment? If I can get back to admissibility in a second. But first, as I said, even if you were to find it admissible, the undisputed evidence is plaintiff's economist only analyzed antitrust injury with regard to the 338. Never looked at the 517. In fact, interestingly, the damage figures start before the 517 ever even gets issued. So we have a complete and total failure of antitrust injury on the 517. So I submit again, without more, there's no need for this court to reach the ALJ admissibility issue, since if you were to find it was admissible and remand it back to Judge Armstrong for reconsideration of either the 338 without an expert witness or reconsideration in line to the 517, it's going to be a pointless exercise since we don't have any antitrust injury on the 517 at all. Well, what about the 8038 issue on the merits as opposed to whether it's been of hearsay? What she was excluded on was the basis that it was a different record than the one that was before her. And she did that after citing this court's opinion in Texas Instruments, where the court instructed that when confronted with an ALJ's opinion, you're supposed to read it and give it whatever weight you think it's entitled to. Clearly, she did that. She gave it the weight to which she thought it was entitled. And I submit on an abuse of discretion standard, that can't be said to be error. But let me go on further as to why admission of the ALJ report would probably have been error. In order to accept the ALJ's report, you've got to accept the ALJ's claim construction. Remember, plaintiffs told Judge Armstrong, there are no terms here that need to be construed. They all will be given their ordinary meaning. And in reliance on that, we didn't have a markman hearing. The ALJ construed at least 15 different terms, including what it would take to be one of ordinary skill. And the constructions, while they clarify, certainly are not in everyday language. But the point is, nobody ever asked Judge Armstrong, please adopt the ALJ's claim construction. They told Judge Armstrong, there is no need for claims construction here. But having said that, we now like to offer a report based on 15 claims constructions. And as we know, an opinion or evidence that's based on a faulty claims construction is prejudicial error. Here, I submit admitting the ALJ's report would have been faulty claims construction. And it certainly wouldn't have been claims construction that Judge Armstrong ever agreed to. Do you take issue with the broad proposition? I understand you're making very case-specific arguments, which is fine. But do you disagree with the broad proposition that an ALJ opinion in general, including an ITC ALJ opinion, is admissible under 8038? I don't know enough to answer the question globally for ITC investigations, which I think is what we're concerned with here. I submit the answer is no, because the rationale for admitting the ALJ's opinions in cases like Paducah towing, where we're talking whether a barge was tied up properly, is there are factual findings that are made from which inferences are then drawn. When we talk about an ITC proceeding, by definition, per patents are concerned, we're going to be starting with legal determinations, definitions of the claims. So rather than just setting out to see whether the barges were correctly tied up, the ITC is going to start with a number of legal conclusions. Didn't Beach Aircraft really answer that question? Didn't Beach Aircraft, by the Supreme Court, said, you're really not going to draw these nice distinctions between facts and law. We're going to allow the adjudication or investigation, whichever it is, of the administrative agency to come in. Correct. They didn't do so in context of something like the 560 investigation, where we have 15 claims constructions. And as we know, a case is not authority for an issue not considered. But you're coming back to the sort of case specific question. For now, I'm more interested in the general question. Just if you have an ITC, ALJ opinion, just in the abstract, is that per se inadmissible, always admissible, or as you're suggesting with the argument about claim construction, sometimes admissible? Well, I think under this court's authority, in terms of consider it for whatever you think it's worth, that's left to the sound discretion of the district judge to do it. However, I'm unaware of any case where a district judge has actually admitted an ITC, ALJ's opinion. And if I was listening earlier, I share your concerns as to why is it that is in Mendenhall, we don't let the work of Article III judges be admitted, but we somehow let the work of Article I judges be admitted. And I know in the Zeus case cited by the opposition, the Fourth Circuit goes through their analysis of why it should be. But I don't think if you're trying to explain to somebody in a bar why it works this way, I think you'd have a difficult time explaining why Article III opinions are of lesser value than Article I opinions. So globally, I'm troubled by that. Again, going back to cases like Paducah Barge, I don't know whether we have to have a rule for all purposes on those, but for anything that starts with claims construction, we're not talking about a factual investigation. We're talking about starting with legal interpretations, then applying those to the facts, and then coming up with ultimate... But there are still factual determinations. I mean, that's what I find kind of troubling about this argument you're making, is the ITC certainly makes underlying factual determinations in reaching all of its conclusions. And if ALJ decisions are admissible in other areas for those kinds of factual conclusions, why shouldn't they be here? Well, as I say, in other areas, somebody goes out in the field and starts investigating the facts. Here in the 560 investigation, the ALJ starts by saying, here is what I think the law should be, and then goes and investigates the facts, and then decides under his or her version of what the law should be, here is what the legal inferences are that should be drawn from it. If you think about it here, the only thing the plaintiffs want the 560 investigation for are the legal conclusions. They aren't interested in the factual background history of the patent law. They want the ultimate conclusions of invalidity. That's the only thing they're looking for. And those are only as good as the interpretive findings on which they're based. But yet, Judge Armstrong didn't get any say in that whatsoever. We let the ALJ report in, we completely do an end-run around Markman. And ALJ gets to decide what the terms are going to be. And we get to do a run around Rule 26, an expert witness disclosure. Because we never get to cross-examine Dr. Pashley or any of the underlying... We haven't touched on one other aspect of this, which we did with your friend, which is, if we're only left with her decision with regard to the expert, whether you read that as being independent of allowing or not allowing the ALJ opinion in, or if the two are so mushed together. I see those as two completely separate issues. Because even if you let the ALJ's opinion in, there may not be any need for interpretation, but there's sure need for explanation. And only an expert witness is going to be able... What are we going to do? Just give the jury the ALJ's report and say, have at it and figure out. It's kind of interesting to think what this trial would have looked like if summary judgment hadn't been entered. Put in the patents, put in the ALJ's report, put in some cases. Now, to answer your question directly, Your Honor, without experts, how is anybody going to determine what the scope of these patents are? I mean, the quote that Judge Armstrong offers about the mind-numbing complexity of what's involved. How are we going to take the prior references, the prior art, and have a lay jury interpret what they mean, particularly with a means plus function patent. Lay jury is going to determine whether the prior art has equivalent structure for each of those. And in terms of what the PTO would have done, would they have found that there was a material basis for denying the patents in this case without expert explanation? What's a lay jury to do? So I submit they're two completely separate issues. And in fact, that now provides a third reason why even if you were to find the ALJ report admissible, there still wouldn't be a basis for reversal because of a total lack of expert testimony to explain to somebody what it meant. Thank you. Thank you very much. Will we store four minutes to even things out here? Thank you. I'd like to clean up a few quick things that appear to cause some confusion. Before you get to anything else, could you resolve the question of whether Judge Armstrong made a finding of fact, if one can make a finding of fact on summary judgment with respect to the 338? Absolutely, Your Honor. That's where I was and I'm surprised to hear it come up as somehow disputed. It is also conceded in footnote 14 at page 55. Well, show me the particular language because I just want to make sure we have a dispute here. At page 26, Judge Armstrong refers to Simcoe's consultancy with Sandisk and says, our position is that you can infer from that. What line on 26? I'm sorry. Lines 9 to 14. I don't see a finding there. I'm just referencing your argument you made on page 24, which is quoting your argument from Judge Fogle. Correct your argument, Your Honor. What's going on here is that... This is all your argument. Where did she specifically make any suggestion that she believed you or was relying on Judge Fogle when she specifically said she wouldn't? I read that passage to mean, Your Honor, that she had taken that as true. And in fact, that is conceded at page 55, footnote 14 of their brief. There's no dispute here. They say Mr. Simcoe's retention as a consultant for the 338 re-exam doesn't extend the duty to the 517 proceedings. It's at page 55, footnote 14. There is no serious factual dispute here. Well, this is a footnote in their brief on appeal. I don't know how that does anything to the evidence you presented to the district court. Well, Your Honor, the point is that the evidence... I agree with Judge Bryson that the evidence is... It does cut both ways, but there's evidence... Well, I'm not sure how it cuts in your direction at all. I mean, the evidence that I found, which was the same evidence that you cited, not coincidentally, seemed to suggest that he was hired in connection with the 382 that was in a reference to the 338. The testimony, Your Honor, is that he was hired around the time and it is unclear. There's testimony from Dr. Harari and Mr. Marotra that he was hired around the time of the re-exam. They don't know exactly when. And, Your Honor, that fuels the inference here that all they're doing is trying to act like Mr. Simcoe didn't have anything to do with this because he very likely knew of and made them aware of these material references. I mean, the real problem here is before Judge Fogel, you went through discovery, you presented a lot of things, you may have taken depositions, and here you try to piggyback on the proceedings before Judge Fogel and you didn't introduce any of that evidence and you're trying to rely on mostly what Judge Fogel, you did before him, and it's just not enough to create a genuine issue. Well, Your Honor, I do want to direct you to... We did, in fact, cite this evidence. Sanders just stood up here and said, we didn't cite the evidence, we only cited Judge Fogel. That's in our argument where we were trying to present to Judge Armstrong how to deal with this 79. In our brief, it is in the background section because that's, of course, where we would present the factual basis for our argument. I don't disagree that you definitely cited the ALJ opinion, but you didn't cite much else. And the intent evidence, Your Honor, and that's at 11-877-79. We ran through it all and we provided... That's why it's on the record here. But when you get to... I'm sorry, go ahead. No, go ahead. When you get to the intent argument, you say, here's why we've established intent. There's no reference to the ALJ's opinion. So if I'm writing Judge Armstrong's opinion, I say, what do they have to say about intent? And there's no reference to the ALJ's opinion. Your Honor, the ALJ didn't consider an equitable conduct. That was just an invalidity determination. So, of course, we weren't citing that on the intent question. What we were citing was the evidence, the freestanding evidence of intent, which we ran through, put in the record... Okay, so you're saying that the ALJ's opinion only goes to materiality, doesn't have anything to do with intent. Okay. And so our position here is that what the court should have done, the reason we were citing Judge Fogle, Judge Hughes, is that what the court should have done is balance it the same way. That was the argument that we were making, that the very same evidence was present in both cases. We presented that evidence and said, you should reach the same conclusion Judge Fogle did at summary judgment. But what evidence? I mean, I'm confused. Are you talking about that ambiguous deposition testimony? Is there anything more specific about the guy's... Because the hiring of the consultant, I mean, if he certainly was hired to work on that re-examination, it seems like a good point for you. Sure. But the deposition testimony doesn't do it for me. Is there anything else? That's the evidence we have in the record, Your Honor. The record is not as well developed as it could be on that point. We also do have evidence that they cited the same Simcoe references in the 560 patent application, which Judge Bryson referred to. And on the face of it, it's related, Your Honor. That patent is multi-state flash EEPROM. And the prosecution... It wasn't clear to me on the face of it. And I have to say, I'm not surprised it wasn't clear to Judge Armstrong, because she said it wasn't clear to her. I mean, that's one of those instances in which you sure could have benefited from an expert. That's... Well, Your Honor, on intent, expert evidence likely would not have been admissible anyway. But you can still relate the patents. What the patent means. Well, there's further evidence of that, Your Honor. It's Exhibit 37 to their summary judgment There's testimony from the prosecuting attorney that the searches he ran to find material prior art references were about multi-state flash memory. That from the very title of the 560 patent suggests very strongly that it was the same searches he ran the first time around. The natural inference there is... Asking an awful lot of the district court to go around searching through the record to find something in Exhibit 13 that you didn't point out in your brief. Fair enough, Your Honor. But it is also taken in context with the other evidence that we have here. It has to be considered in the aggregate. All right. And the big... If I can make two more very quick points just in response to what came up. The 517 damages argument is absolutely not a basis for this court to affirm. That was not presented at summary judgment. It was not a basis on which the district court granted summary judgment. And the evidence that Sandisk cites cuts both ways. Our expert testified, if you look at the deposition testimony, he testified that it's true he didn't break out 517 and 338 in seven columns, but that there's sufficient evidence from his report, and it very well might be in his report, sufficient evidence on damages on 517 alone. That is not a basis on which this court can affirm. And finally, Your Honor, on the admissibility point, what the jury would consider, we're at summary judgment. The ITC determination is admissible evidence at summary judgment to create a genuine issue of material fact. Sandisk waived all its other evidentiary arguments, and it can revisit them when we actually move the document into evidence. But for summary judgment purposes, it's just an admissibility question, and it is admissible. But it's not just a question of admissibility because your summary judgment evidence has to be sufficient to support a jury verdict in your favor. That's correct, Your Honor. So would it be the case that if I walked in and I took an ALJ opinion, which was at least on one issue exactly the same issue, had been adjudicated in a case involving different parties, and I slap it down on the desk and I say, there you are, that's my case on, let's say, materiality. Is that sufficient to get to a jury? It can be, Your Honor, and that's what the court said in Henry v. Dayton. The only evidence that the party in that case had was an ALJ determination and self-serving testimony. What we have is an ALJ determination and admission from one of Sandisk's inventors that permanent inhibit had already been disclosed. It's the very same situation. It can be sufficient. Self-serving testimony, that's independent testimony. Sure, as is the founder's testimony. But my question is, could you just say, we're not going to bother with evidence. We've got evidence. We've got the ALJ's opinion. Co-op.  Because the question is, would the PTO have not issued these patents? We have very strong probative evidence from a different body that says the PTO wouldn't have, and that is sufficient to create a genuine issue of material fact. Thank you. We thank you both sides. The case is submitted. That concludes our proceedings for this morning.